# McLellan's Appeal. [No. 2.]

1. By a decree of the Supreme Court, an assignee was held liable for a debt owing to the assigned estate, because he had reconveyed land of the debtor, held as security for the debt, and found by auditors to be of sufficient value to pay it, without payment, whereby the debt was lost; and the court below was directed to ascertain the amount of the debt. On the hearing for this purpose in the court below, *Held*, that the assignee should not be allowed to show that by reason of a prior mortgage, of which he had been ignorant, the land was valueless as a security for the debt.

2. The mortgage being of record, the assignee could have found it by reasonable diligence, and should have given it in evidence on the former hearing: the former decree was conclusive as to the value of the land.

3. On the first hearing the auditors found that the land was worth $70,000; the mortgage was $25,000, and the debt to the estate was $22,000. *Held*, the land having been sold under the mortgage for $10,000, to the mortgagee who held other liens amounting to $300,000, that there was no presumption that $10,000 was its actual value.

May 11th 1875. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Appeal from the Court of Common Pleas of *Franklin county:* Of May Term 1875, No. 45.

In the matter of the accounts of William McLellan, assignee for the benefit of the creditors of the Chambersburg Saving Fund Association.

The facts and proceedings on these accounts appear in Chambersburg Saving Fund Association's Appeal, antea p. 203.

Upon the return of the record from the Supreme Court in that case, the appellants petitioned the Court of Common Pleas to make a decree in conformity with the opinion of the Supreme Court, viz.: that the former decree of the Court of Common Pleas should be so modified as to charge the assignee with a sum equal to the residue of the debt due from Anspach to the association.

To this petition, McLellan, the assignee, filed an answer, setting out that the unpaid indebtedness of Anspach to the association

was not found by the opinion of the Supreme Court, that therefore an account should be stated to ascertain that indebtedness; that Anspach was not a party and was not heard in the former proceedings, and might claim to be heard in ascertaining his indebtedness, and that the amount should be ascertained so as to conclude all parties. He prayed that an auditor be appointed "to take testimony, find the facts, state an account, and report to the court the exact amount" which Anspach owes to the association and with which the assignee should be surcharged, the auditor to give notice to all parties in interest, &c.

The association filed a replication to this answer, averring, amongst other things, that the amount of Anspach's indebtedness to the association had been judicially ascertained, protesting against the appointment of an auditor, and praying the Court of Common Pleas to make a decree in accordance with the opinion of the Supreme Court. They afterwards filed an "additional replication," again averring that Anspach's indebtedness had been judicially ascertained, and that the assignee had made that a part of his defence on the former hearings, &c., and was estopped, &c.

The assignee afterwards filed a "Supplemental Answer," setting out that the decree of the Supreme Court was based on the assumption, that the coal-land in Schuylkill county, conveyed by Anspach to Reed to secure his indebtedness to the association, was sufficient to have secured that indebtedness, and that by the negligence of the assignee the association was deprived of its protection. He averred that the land was worthless as a security, because Anspach, about a month before he had conveyed the land to Reed, had executed a mortgage to Levi Matson and Charles Baber, to secure the sum of $25,000, which covered all the interest of Anspach in the tract, that judgment was recovered in a scire facias on the mortgage for $26,791.66, and that the land was sold by the sheriff to the Commercial National Bank of Pennsylvania, who was then the holder of the mortgage, for $10,000. The answer further averred that the assignee had no knowledge of the mortgage until August 1st 1874, nor of the proceedings thereon until August 3d; and that from the time of the association's assignment, the land had not been of greater value than the mortgage.

The answer contained other averments not important to notice.

The prayer was for an auditor to ascertain and report the facts as to the matters averred.

The association filed a replication to the supplemental answer, traversing many of its averments, and averring, amongst other things, that the Commercial National Bank had in 1865 recovered a judgment against Anspach, which was a lien on the land in Schuylkill county; that the bank had paid for the mortgage the full amount due on it; that Anspach had paid the interest on the mortgage regularly until it passed into the hands of the bank;

and he had continued solvent up to 1866; that the bank had realized from their judgment above $150,000; that the bank had bought this property at sheriff's sale on the 28th of June 1867, at a nominal sum, and on the 29th of May 1871, sold for $87,000 the land that had been conveyed by Anspach to the association, and they averred that the assignee had notice of the mortgage two years before filing his answer.

The court (Rowe, P. J.) made the following decree:—

"And now, to wit, August 10th 1874, it is ordered, that the decree of this court made upon the hearing of the exceptions to the supplemental report of the auditors, on the 10th day of October 1873, be so far modified as to surcharge the said William McLellan, assignee and accountant, with a sum equal to the residue of the debt due from Anspach to the Chambersburg Saving Fund, and that the residue of said decree be confirmed. And it is now referred to the former auditors, namely, Messrs. Douglas, McGowan and Bonebrake, to ascertain and report the residue of the debt due from said Anspach to the Chambersburg Saving Fund, at the time of the filing of the third account, with directions to take further testimony, if necessary, and make report," &c., but refused to authorize the auditors to hear the matters embraced in the supplemental answer of the assignee.

On the hearing before the auditors, the assignee made a number of offers of evidence to sustain the averments in his answers that the Schuylkill county land conveyed by Anspach was valueless as a security for Anspach's indebtedness to the association.

The offers were all rejected by the auditors as irrelevant to the questions committed to them by the court, and because they had no authority to make inquiry beyond those questions.

The auditors found, and so reported, that the whole amount ($22,419.59) of the judgment against Anspach, with interest ($1505.72) from the 22d of April 1871, was unpaid on the 5th of June 1872, and that the assignee was liable on that account for $23,924.32. They also found that he was liable, as part of the indebtedness of Anspach, for a note for $2500, given by Anspach for stock in the association, with interest from April 4th 1862 to June 5th 1872, $1525—making this item $4025.

They reported that the whole amount for which the assignee was liable on account of Anspach's debt was $27,949.30.

Exceptions were filed by the assignee to the report. A number of them related to the rejection of his offers of evidence; others as to charging him with amount of Anspach's judgment and stocknote and interest.

The court (Rowe, P. J.) overruled the exceptions, which alleged error in rejecting his offers of evidence and those charging him with the amount of the judgment against Anspach with interest;

and sustained the exception which alleged error in charging him with Anspach's stock-note and interest.

The court decreed that the balance in the hands of the assignee was $28,724.37.

The assignee appealed to the Supreme Court, and assigned for error the overruling of the exceptions as to offers of evidence and decreeing that there was a balance of $28,724.37 in his hands.

*J. McD. Sharpe* and *A. K. McClure*, for appellant.

*H. Gehr* and *W. Mac Veagh* (with whom was *G. W. Brewer*), for appellees.

Mr. Justice Mercur delivered the opinion of the court, May 31st 1875.

When this case was before us last year, we reviewed the facts and carefully considered the conclusions of the auditors. The value of the lands, as well as the liability of the appellant to account therefor, had been distinctly put in issue before the auditors. They had heard all the testimony offered by either party, bearing on both these questions. They had found as a fact "that the lands were of the value of $70,000 and upwards, and were sufficiently valuable to have paid, if sold, the whole indebtedness of Anspach then due to the appellees." We approved and affirmed this finding. We held that the appellant was guilty of supine negligence in permitting lands of that value to be taken from him under the facts as established. The actual loss, however, that the present appellees had thereby sustained was much less than the value of the lands. That loss was the amount only due them from Anspach. That sum was the measure of their damages. Inasmuch, however, as that precise sum did not distinctly appear, the case was sent back substantially with instructions to ascertain the same, and thereupon to enter a decree surcharging the present appellant in that sum.

It is now claimed that, conceding the lands to have been of the actual value of $70,000, yet owing to the existence of a prior mortgage of $25,000 on them, their practical value in the hands of the appellant was thereby lessened to that extent. There are several reasons why this alleged fact should not be inquired into now.

1. It existed long prior to the former hearing before the auditors. It was a matter of record. Reasonable diligence required that the appellant should have found it and have given it in evidence. As well might the appellees now ask to give additional evidence for the purpose of charging the appellant with the amount of the worthless builder's mortgages, as for the appellant to open any question in regard to the land. The former decree as to its

[McLellan's Appeal.]

value must be held conclusive. There is great force and wisdom in the maxim, "*Nemo debet bis vexari, si constet curia quod sit pro unâ et eâdem causâ.*" Justice demands its application in this case.

2. If this prior mortgage of $25,000 existed, it still left a remaining value of $45,000 in the lands. That value exceeded by some $20,000 the sum due from Anspach, for which the appellant was chargeable; but

3. This mortgage was also a lien on other valuable coal-lands of Anspach. The mortgage-creditor could have been required first to resort to those lands, and they were probably of sufficient value to have satisfied the mortgage. It follows that the land which appellant voluntarily permitted to be lost to the appellees, notwithstanding all now alleged, were a valuable and reliable security for the full amount due from Anspach. The subsequent sheriff's sale and purchase, for the nominal sum of $10,000, by one then holding all the liens on the land, and to an amount exceeding $300,000, creates no presumption of their actual value. Hence to have admitted the evidence offered by the appellant would have been not only beyond the present subject of inquiry, but could not have resulted in any benefit to the appellant.

The auditors were therefore entirely right in rejecting the evidence, and the learned judge was correct in the decree which the court made. It is affirmed.

Appeal dismissed at the costs of the appellant.

Mr. Justice SHARSWOOD dissented.